Joseph N. Kinney, Jr., and Helen C. Kinney v. Commissioner.
Kinney v. Commissioner
Docket No. 67225.
United States Tax Court
T.C. Memo 1958-209; 1958 Tax Ct. Memo LEXIS 15; 17 T.C.M. (CCH) 1039; T.C.M. (RIA) 58209; December 11, 1958
*15 Deductions: Alimony payments: Treatment of alimony: Insurance premiums. - Under the terms of a separation agreement, incident to a divorce, taxpayer agreed to pay his former wife $300 per month until her death or remarriage for her support and for the maintenance of their four children. Taxpayer agreed to assign a $35,000 life insurance policy to a trust in order to secure performance of the separation agreement. In 1954 and 1955, taxpayer claimed alimony deductions for amounts paid to the trustee as premiums on the insurance. The Tax Court held that the premium payments were not deductible because they were not includible in the gross income of taxpayer's former wife. R. H. Sabel, Esq., 1018 Farmers Bank Building, Pittsburgh, Pa., for the petitioners. Leo A. Burgoyne, Esq., for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: The respondent determined deficiencies in petitioners' income tax for the years and in the amounts as follows: Year
Amount
1954
$452.44
1955
268.18
The sole issue presented for our determination is the correctness of the respondent's action in determining that payments made during 1954 and 1955 by petitioner Joseph N. Kinney, Jr., representing premiums on certain life insurance policies, are not deductible by petitioners as alimony payments under section 215 of the Internal Revenue Code of 1954. All of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, are residents of Pittsburgh, Pennsylvania, and filed their joint income tax returns for 1954 and 1955 with the *17 director at Pittsburgh. Joseph N. Kinney, Jr., sometimes hereinafter referred to as petitioner, and Kathryn E. Kinney, sometimes hereinafter referred to as Kathryn, were married on May 19, 1928 in Bethlehem, Pennsylvania. Four children were born of their marriage. The petitioner and Kathryn separated during 1940 and, on January 18, 1941, executed a separation agreement. Pursuant to the foregoing agreement, he agreed to pay Kathryn $300 a month until her death or remarriage for her support and maintenance and for the support, education and maintenance of their four minor children. Upon her death or remarriage, he agreed to continue the payments in the amount of $300 a month, but such amount was to be reduced by $50 a month as each child reached the age of 21. At the time the youngest child reached the age of 21 it was provided that the $300 monthly payments were to terminate. The agreement further provided as follows: "FIFTH: (a) For the purpose of securing the performance of this Agreement and for the purpose of providing for the support and maintenance of the party of the second part and of the said children in the event of the death of the party of the first part, the parties *18 hereto agree to create a trust with the Allegheny Trust Company of Pittsburgh, Pennsylvania. The party of the first part agrees that he shall pay unto the said trustee, contemporaneously with the execution of this Agreement, the sum of Three Hundred ($300.00) Dollars in cash and that he shall further irrevocably assign to the said trustee all of the life insurance which he now carries on his life in the approximate sum of Thirty-five Thousand ($35,000.00) Dollars, naming the said trustee as beneficiary of said life insurance policies, the principal sum of which shall be collected by the trustee upon the death of the party of the first part, and used by said trustee, together with such other sums as may be in its possession as trustee, to continue the payments to the party of the second part in accordance with the terms and provisions of this Agreement, and upon the death of the party of the second part to divide the balance equally among the children of the parties of the first and second parts hereto in accordance with the terms and provisions of said Trust Agreement. The party of the first part agrees that he shall pay to the said trustee in stated monthly installments a sum equal *19 to at least one-twelfth (1/12) of the total annual premiums due upon the policies deposited irrevocably with the trustee under the terms and provisions of this Agreement, less any dividends received in connection with said policies. The Trust Agreement shall contain a provision authorizing the trustee in its discretion to use such portion of the principal of said trust as may be necessary to meet any emergencies in connection with the support, education or maintenance of the party of the second part or of any of the children. * * *
"SIXTH: Inasmuch as the party of the first part has given to the party of the second part certain sums of cash and certain securities, it is mutually agreed by and between the parties hereto that the party of the second part shall, contemporaneously with the execution of this Agreement, turn over to the Allegheny Trust Company, as trustee under the terms and provisions of the Agreement hereinabove referred to, the following property: "(a) The sum of Twenty-two Hundred ($2,200.00) Dollars in cash "(b) Sixty (60) shares of the Common Capital Stock of the United Engineering and Foundry Company
"(c) Two (2) shares of the Common Capital Stock of *20 the First National Bank at Pittsburgh." The marriage of Joseph N. Kinney, Jr., and Kathryn E. Kinney was dissolved by a decree of divorce entered on June 3, 1941. The foregoing separation agreement was incident to the divorce. On June 7, 1941, the petitioner and Kathryn, as settlors, and the Allegheny Trust Company, as trustee, executed a trust agreement pursuant to the provisions of the separation agreement. Kinney delivered to the trustee certain insurance policies on his life in the aggregate amount of $35,000 which were made payable to the Allegheny Trust Company and were subject to its control. The trustee was given full power under the trust agreement to invest and reinvest the corpus of the trust in such securities or other property as it should deem advisable, provided prior notice thereof was given to petitioner. Upon the maturity of any of the insurance policies subject to the trust agreement, the trustee was to collect the proceeds from the insurer thereunder. The trust agreement further provided that the entire net income of the trust was to be paid to Kathryn until her death or remarriage. In the event of her remarriage during the lifetime of petitioner, she was *21 to be paid the net income arising from $5,000 of the principal of the trust estate until the time of the death of either party. Further, in the event that Kinney failed to make the monthly payments in the amount of $300 required under the separation agreement, the trustee was obligated to make such payments. If, after the death of petitioner, Kathryn remained unmarried, the trustee was to pay her $300 monthly, chargeable against either income or corpus. She was to receive a distribution of $5,000 from the trust estate upon her remarriage or upon the death of Kinney. The trust agreement also provided that in the event she predeceased petitioner, or in the event she remarried prior to his death, the trustee was required to pay the net income of the trust (except in the latter event the net income only in excess of the net income of $5,000 payable to Kathryn) equally to the then living children or their representatives. Upon the death of Kathryn, or in the event she should predecease the petitioner, then upon his death, the trustee was to divide the trust estate into equal shares and distribute the estate to their living issue. During 1954 and 1955, Kinney made payments in the amount *22 of $808.16 and $743.95 to the Allegheny Trust Company in payment of premiums on the insurance policies subject to the trust agreement. Subsequent to his divorce from Kathryn E. Kinney on June 3, 1941, petitioner married his present wife, Helen C. Kinney. Petitioners contend that the amounts paid by Kinney to the Allegheny Trust Company as insurance premiums during 1954 and 1955 are deductible as alimony payments under section 215 of the 1954 Code. [1]
The respondent has taken the position that the foregoing payments are not deductible as alimony payments under section 215 of the 1954 Code because the amounts in question are not includible in the gross income of Kathryn under section 71(a)(1) of the 1954 Code. [2] *23 The issue here presented is therefor narrowed to the question whether the payments involved were "received" by Kathryn during 1954 and 1955 within the meaning of section 71(a)(1) of the 1954 Code. It is obvious that Kathryn received no cash, either actually or constructively, represented by the payments in question during the years in issue. The payments were received by the Allegheny Trust Company and apparently were turned over by it to the insurer in satisfaction of premiums due. Further, from an examination of the record *24 herein, it does not appear that she received any property of ascertainable value during those years. She possessed none of the incidents of ownership with respect to the insurance policies on which the premiums here in question were paid. The trustee was named as beneficiary under those policies and Kathryn had no power to change the beneficiary. Moreover, the trustee itself possessed the policies and was given the authority to collect any proceeds maturing thereunder. Any increase in the cash surrender value of the policies could inure to the benefit of Kathryn only upon the occurrence of certain specified contingencies and could not constitute an immediate economic benefit to her. Finally, the separation agreement expressly states that the trust instrument was executed for the purpose of securing the performance of the separation agreement. Accordingly, the situation here presented falls squarely within our decisions in Lillian Bond Smith, 21 T.C. 353; Beulah Weil, 22 T.C. 612, affd. 240 Fed. (2d) 584, certiorari denied 353 U.S. 958; Raoul Walsh, 21 T.C. 1063; Carl G. Ortmayer, 28 T.C. 64 (on appeal C. *25 A. 7); Mayer Blumenthal, 13 T.C. 28, affd. 183 Fed. (2d) 15. In those cases we held that if the purpose of the provisions in the separation agreement concerning the life insurance policies was to provide security for support payments in the event of the death of the former husband, or if the former wife's rights under the policies are contingent, then the premium payments are not includible in her gross income and are consequently not deductible as alimony payments by the husband. Since the purpose of the trust here involved is stated to be the securing of performance of the provisions of the separation agreement, and since Kathryn did not possess any of the incidents of ownership with respect to the policies, and her rights thereunder are subject to contingencies, we are of the opinion that the amounts applied by the petitioner in payment of insurance premiums during the years in issue were not received by his divorced wife within the meaning of section 71(a)(1) of the 1954 Code and consequently were properly disallowed as deductions under section 215 of the 1954 Code. Decision will be entered for the respondent. Footnotes
1. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.↩
2. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.↩